# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE JEAN HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-1032 |
| ) | |
| MICHAEL J. ASTRUE, ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL ) | ECF Nos. 11,16 |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**I.     Introduction**

Plaintiff Diane Jean Hall ("Hall") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433] and partially denying her application for supplemental security income ("SSI") benefits under Title XVI of the Act [42 U.S.C. §§ 1381-1383f]. Pending before the Court are cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 11 & 16. For the reasons that follow, Hall's motion for summary judgment (*ECF No. 11*) will be denied, the Commissioner's motion for summary judgment (*ECF No. 16*) will be granted, and the administrative decision of the Commissioner will be affirmed.

**II.     Procedural History**

Hall's first applications for DIB and SSI benefits were filed on November 15, 2004. R. at

1

11. The applications were initially denied on January 14, 2005. R. at 129. No further action was taken with respect to those applications. R. at 11.

Hall protectively filed the instant applications for DIB and SSI benefits on March 10, 2006, alleging disability as of August 30, 2000.[1] R. at 102, 108, 128. The applications were administratively denied on October 20, 2006. R. at 11, 74. Hall responded on December 14, 2006, by filing a timely request for an administrative hearing. R. at 79. On March 5, 2008, a hearing was held in Morgantown, West Virginia, before Administrative Law Judge George A. Mills III (the "ALJ"). R. at 22. Hall, who was represented by counsel, appeared and testified at the hearing. R. at 31-51. Dr. Larry Ostrowski, an impartial vocational expert, also testified at the hearing. R. at 51-64.

In a decision dated June 4, 2008, the ALJ determined that Hall had become "disabled" within the meaning of the Act on June 1, 2006, but that she had not been "disabled" before that date. R. at 7-20. Hall was insured for benefits under Title II only through December 31, 2005. R. at 12. Therefore, she was awarded only SSI benefits under Title XVI. R. at 20. On August 4, 2008, Hall filed a request for review with the Appeals Council. R. at 5. The Appeals Council denied the request for review on June 10, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1.

Hall commenced this action on August 5, 2010, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 3. In accordance with 28 U.S.C. § 636(c)(1), the parties consented to having this case adjudicated by a United States Magistrate Judge. ECF Nos. 7 & 8. Hall and the Commissioner filed motions for summary judgment on November 30, 2010, and February 4, 2011, respectively. These motions are the subject of this memorandum opinion.

---

[1] The alleged onset date was later amended to August 30, 2003. R. at 13. As of that date, Hall was a "person of advanced age" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(e), 416.963(e).

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress clearly has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

3

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

4

the claimant is capable of performing other jobs existing in significant numbers in
the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV.     The ALJ's Decision

The ALJ began his analysis by stating that the previous determinations denying Hall's applications for DIB and SSI benefits were "final and binding." R. at 11. Hall's alleged onset date was amended to August 30, 2003, which was the day that she had reached the age of 55. R. at 13, 67-68. The ALJ determined that Hall had not engaged in substantial gainful activity subsequent to that date. R. at 13.

5

Hall was found to be suffering from degenerative changes of the lumbar spine, a depressive disorder and an adjustment disorder. R. at 14. Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), the ALJ concluded that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 14-17. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Hall's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, prior to June 1, 2006, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with an option to sit or stand; standing and walking in combination no more than two hours continuously; lifting and carrying two to three pounds frequently and up to 20 pounds only occasionally; and performing all posturals occasionally, except never climbing.

R. at 17. Hall had past work experience as a bartender. R. at 141. Dr. Ostrowski characterized Hall's prior job as a "skilled"[2] position at the "light"[3] level of exertion. R. at 52. Since the position was consistent with Hall's residual functional capacity (as determined by the ALJ) prior to June 1, 2006, the ALJ determined that Hall had been capable of returning to her past relevant work before that date. R. at 18. Based on a review of the documentary evidence contained in the administrative record, the ALJ ascertained that, as of June 1, 2006, Hall had been limited to

---

[2] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).
[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"unskilled"[4] work. R. at 18. Since Hall's previous job had been classified as a "skilled" position, it was determined that she had been incapable of returning to her past relevant work as of June 1, 2006. R. at 18-19.

Hall was born on August 30, 1948, making her 57 years old on June 1, 2006. R. at 19, 31. She was classified as a "person of advanced age" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(e), 416.963(e). She had a high school education and an ability to communicate in English. R. at 32-33; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ determined that, as of June 1, 2006, Hall was disabled by direct application of Medical-Vocational Rule 202.06. R. at 20; 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2, Rule 202.06.[5]

## V. Discussion

In his decision, the ALJ determined that the administrative denials of Hall's prior applications were "final and binding," and that no grounds existed for reopening them. R. at 11. Those applications were denied on January 14, 2005. R. at 129. The ALJ also concluded that Hall was "disabled" as of June 1, 2006. R. at 20. The only question before the Court is whether "substantial evidence" supports the ALJ's determination that Hall was not disabled between

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[5] At the hearing, Hall's counsel objected to Dr. Ostrowski's characterization of Hall's prior bartending job as a "skilled" position. R. at 54. In support of her request for review, Hall argued to the Appeals Council that her past relevant work had been "unskilled." R. at 163-166. She expressed the view that Medical-Vocational Rule 202.04 would have directed a finding of disability for the period of time preceding June 1, 2006, if the ALJ had properly classified her past relevant work. R. at 165. This argument was based on a misunderstanding of the Medical-Vocational Rules. The Rules address only "the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 468, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The availability of jobs in the national economy consistent with a claimant's residual functional capacity and vocational background is relevant only at the *fifth* step of the sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). Where a claimant can return to his or her past relevant work, it makes no difference whether such work exists in the national economy. *Id.* If the ALJ had classified Hall's prior bartending position as an "unskilled" position, Hall would not have been found to be disabled as of June 1, 2006, since the bartending position would not have been precluded by her inability to perform "skilled" work. R. at 19.

7

January 15, 2005, and May 31, 2006. The question is of considerable importance to Hall, since she was insured for Title II benefits only through December 31, 2005. R. at 20.

Hall argues that the ALJ erred in failing to consider evidence submitted by her treating chiropractors. ECF No. 12 at 12-14. As an initial matter, the Court notes that a chiropractor is not classified as an "acceptable medical source" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Consequently, a claimant cannot establish the existence of a medically determinable impairment solely by reference to the opinion of a chiropractor. 20 C.F.R. §§ 404.1513(a), 416.913(a). Nonetheless, evidence supplied by a chiropractor can be considered by the Commissioner in determining the degree to which an established impairment impacts a claimant's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d).

The existence of Hall's back impairment is not disputed by the Commissioner. Hall was involved in an automobile accident on September 4, 1994, while riding as a passenger. R. at 170. Dr. Nabil Jabbour examined Hall on September 6, 2006, reporting that she suffered from pain in her lower back, and that she had not been able to bend forward during the course of the examination. R. at 232. A magnetic resonance imaging ("MRI") scan conducted on October 24, 2007, revealed that Hall had "hypertrophic degenerative changes at multiple vertebral levels with narrowing of the disc space at L5-S1." R. at 299 (capitalization omitted). Since Hall's back impairment had been identified by "acceptable medical sources," the evidence submitted by her chiropractors was relevant to the inquiry of whether that impairment precluded her from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1513(d), 416.913(d).

On October 19, 2006, Dr. Emma J. Miller, a chiropractor, completed a "medical source statement" detailing Hall's physical limitations. R. at 268-269. Dr. Miller reported that Hall

could frequently lift or carry objects weighing two to three pounds and occasionally lift or carry objects weighing up to twenty pounds. R. at 268. Dr. Miller indicated that Hall could stand or walk for more than two (but less than six) hours per day, provided that she was afforded an opportunity to rest every two hours, and that she could sit for up to eight hours per day (with a sit/stand option). R. at 268. Although Dr. Miller deemed Hall to be incapable of climbing, she opined that Hall could engage in occasional bending, kneeling, stooping, crouching and balancing. R. at 269. A careful reading of the hearing transcript reveals that the ALJ based his residual functional capacity assessment and corresponding hypothetical question to Dr. Ostrowski on Dr. Miller's report. R. at 17-18, 56-59.

Dr. Ewing Miller, another chiropractor, detailed Hall's physical limitations in a "medical questionnaire" dated June 29, 2007. R. at 276-279. Dr. Ewing Miller indicated that Hall could only sit or stand for one to two hours, and walk for less than one hour, during the course of an eight-hour workday. R. at 276. He reported that Hall could occasionally lift objects weighing up to ten pounds and frequently lift objects weighing up to five pounds, but that she could never bend, stoop, crawl, climb, balance, crouch or kneel. R. at 277. Dr. Ewing Miller further opined that Hall needed to rest for roughly twenty minutes per hour, and that she needed to lie or sit in a recliner for substantial periods of a typical day. R. at 278.

In support of her motion for summary judgment, Hall argues that the ALJ erred in failing to consider or discuss the "medical questionnaire" completed by Dr. Ewing Miller. ECF No. 12 at 12-14. The ALJ did not refer to Dr. Ewing Miller's opinion in determining Hall's residual functional capacity. R. at 14-20. An administrative law judge is ordinarily required to explain his or her reasons for crediting the opinion of one medical professional over that of another. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003). In this case, however, the ALJ was

9

not specifically required to address Dr. Ewing Miller's report. While the ALJ was not permitted to "reject pertinent or probative evidence without explanation," he was also under no obligation to address evidence that was irrelevant to Hall's case. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 204 (3d Cir. 2008).

Dr. Ewing Miller's questionnaire was completed more than a year *after* the date on which the ALJ found Hall to be disabled and more than eighteen months after the expiration of her insured status under Title II. R. at 17-20, 276-279. Thus, it does not directly relate to the period of time at issue in this case. The ALJ found that Hall was disabled as of June 1, 2006. The only question presently at issue is whether Hall was disabled *before* that date. In order to facilitate judicial review of an administrative decision denying a claimant's application for benefits under the Act, the Commissioner is required to prepare an opinion "setting forth a discussion of the evidence" relevant to his "unfavorable" conclusion whenever it is determined that an individual is *not* disabled. 42 U.S.C. § 405(b). The Commissioner is under no corresponding duty to explain his reasons for awarding benefits to a claimant. Where the Commissioner decides to grant a request for benefits, there is no dispute between the parties for a reviewing court to consider.

It is true that evidence of a claimant's medical condition postdating the period of time at issue may sometimes be probative of his or her condition during that period of time. *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004)(recognizing that a claimant's subsequent disabling condition may constitute probative evidence of a preexisting disability); *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990)(remarking that "noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant"); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)(stating that "medical evaluations made after the

expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition"); *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984)(observing that "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status"). Nevertheless, "[t]here are circumstances where such evidence is irrelevant or entitled to little weight as a factual matter, such as where the later medical condition is attributable to some incident that occurred after the period in question, or where there is a substantial lapse of time and a lack of evidence connecting the prior condition to the more recent medical evidence." *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1382 (Fed. Cir. 2009). In this case, Dr. Ewing Miller's report of June 29, 2007, is not significantly probative of Hall's medical condition prior to June 1, 2006, since it directly contradicts Dr. Emma Miller's report of October 19, 2006. R. at 268-269, 276-279.

The ALJ's residual functional capacity assessment was consistent with the findings of Dr. Emma Miller. R. at 17-18, 268-269. The ALJ specifically referred to Dr. Emma Miller's assessment when he formulated his hypothetical question to Dr. Ostrowski. R. at 56-59. By choosing to rely on the findings of Dr. Emma Miller rather than those of Dr. Ewing Miller, the ALJ implicitly determined that Dr. Ewing Miller's findings were lacking in probative value.[6] *Johnson*, 529 F.3d at 205. Such an implicit determination would not have been permissible if the ALJ had found Hall to be capable of working as of June 29, 2007, or if there had been no "substantial lapse of time" between the onset date adopted by the ALJ and the date of Dr. Ewing Miller's report. *Reefer*, 326 F.3d at 381-382 (explaining that an administrative law judge must explain his or her decision to credit some evidence and reject countervailing evidence). A

---

[6] The ALJ did not overlook Dr. Ewing Miller's report. At the hearing, the ALJ specifically recognized that the limitations described in that report, if credited, would prevent Hall from engaging in substantial gainful activity. R. at 56.

11

reviewing court generally cannot substitute its own factual findings for those of the Commissioner in order to affirm an administrative decision. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009)(recognizing the need for a remand where a reviewing court cannot ascertain whether an administrative law judge has "truly considered competing evidence"); *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005)(explaining that a reviewing court "cannot rectify errors, omissions or gaps" in an administrative law judge's analysis "by supplying additional findings from its own independent analysis of portions of the record"). Nonetheless, the United States Court of Appeals for the Third Circuit has declared that a reviewing court may affirm an administrative decision that fails to account for a piece of evidence that is so lacking in probative value that an administrative law judge was "entitled to reject it without explanation." *Johnson*, 529 F.3d at 204. Because Dr. Ewing Miller's report was more than a year removed from the relevant period of time and contradicted by Dr. Emma Miller's earlier report, the ALJ was not required to make reference to it in his opinion. *Id.*

The ALJ determined that Hall had become disabled on June 1, 2006, due to a deterioration in her mental condition. According to the ALJ, this exacerbation of Hall's mental impairment rendered her incapable of performing "skilled" work and, hence, unable to return to her past relevant work as a bartender. R. at 18-19. The dispositive question is whether "substantial evidence" supports the ALJ's determination that Hall was capable of working as a bartender before June 1, 2006.

A physical examination of Hall performed by Dr. Jabbour on May 3, 2006, yielded "essentially normal" results. R. at 205. Dr. Lanny Detore performed a consultative psychological evaluation of Hall on June 13, 2006. R. at 207-212. The evaluation revealed that Hall was only "slightly" limited in her abilities to understand, remember and carry out detailed

instructions, and to respond appropriately to work pressures and changes in usual and routine work settings. R. at 211. Dr. Detore indicated that Hall had no "moderate," "marked" or "extreme" limitations. *Id.* Dr. Manella Link, a nonexamining medical consultant, reported on August 24, 2006, that Hall was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." R. at 215.

Hall's nephew committed suicide in September 2006. R. at 257. This event strained Hall's relationship with her sister and caused her mental condition to worsen. R. at 249, 264. Dawn Zinn ("Zinn"), Hall's mental health therapist, opined on June 21, 2007, that Hall was "seriously limited" in her abilities to deal with work stresses, to maintain attention and concentration, to behave in an emotionally stable manner, to relate predictably in social situations, and to understand, remember and carry out complex, detailed and simple instructions. R. at 273-274. On June 16, 2007, Zinn reported that Hall had "marked" difficulties in maintaining social functioning, concentration, persistence and pace, and that she had experienced more than three extended episodes of decompensation. R. at 282. The ALJ attributed the deterioration in Hall's mental condition to her nephew's suicide and the impact that it had on her family. R. at 16-17.

The evidentiary record clearly supports the ALJ's determination that Hall was capable of working as a bartender before June 1, 2006. It is not entirely clear how the ALJ determined that Hall had become disabled on that date, given that her nephew's suicide did not occur until September 2006. An administrative law judge must ordinarily consult a medical advisor whenever a claimant's actual onset date cannot be readily determined by reference to his or her medical records. *Perry v. Astrue*, 515 F.Supp.2d 453, 463 (D.Del. 2007). As noted earlier, however, the Commissioner is not required to explain his decision to award Hall SSI benefits as

of June 1, 2006. Instead, he is only required to explain his decision to *deny* her DIB and SSI benefits for the period of time preceding that date. 42 U.S.C. § 405(b). Since the record overwhelmingly supports the ALJ's conclusion that Hall was capable of working as a bartender between January 15, 2005, and May 31, 2006, the Commissioner's administrative decision must be affirmed.

**VI.     Conclusion**

The only argument raised by Hall in support of her motion for summary judgment is that the ALJ erred in failing to discuss the "medical "questionnaire" completed by Dr. Ewing Miller on June 29, 2007. ECF No. 12 at 12-14. That argument is without merit, since Dr. Ewing Miller's report postdated the disability onset date adopted by the ALJ by more than a year. *Johnson*, 529 F.3d at 204. The ALJ's residual functional capacity assessment and corresponding hypothetical question to Dr. Ostrowski were based on Dr. Emma Miller's "medical source statement" of October 19, 2006, which had been completed much closer in time to the period at issue. R. at 17-18, 56-59, 268-269. Hall points to no evidence which suggests that she was disabled *before* June 1, 2006. ECF No. 12 at 12-14. Accordingly, the Court will deny the motion for summary judgment filed by Hall (*ECF No. 11*) and grant the motion for summary judgment filed by the Commissioner (*ECF No. 16*). The administrative decision of the Commissioner will be affirmed. An Order will follow.

Dated: March 31, 2011

_____
Lisa Pupo Lenihan
United States Magistrate Judge

14